UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108 (PAM/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S CONSOLIDATED |
| v. | ) | RESPONSE TO DEFENDANTS' |
| | ) | PRETRIAL MOTIONS |
| 1.  DEREK MICHAEL CHAUVIN, | ) | |
| 2.  TOU THAO, | ) | |
| 3.  J. ALEXANDER KUENG, and | ) | |
| 4.  THOMAS KIERNAN LANE, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the United States of America, by and through its undersigned attorneys, W. Anders Folk, Acting United States Attorney for the District of Minnesota, and Samantha Trepel, Special Litigation Counsel for the Civil Rights Division, and responds to the pretrial motions filed by the defendants, Derek Michael Chauvin, Tou Thao, J. Alexander Kueng, and Thomas Kiernan Lane.

## I.  **Introduction**

The defendants are charged with federal civil rights violations stemming from the death of George Floyd in police custody on May 25, 2020. Defendant Chauvin is charged with deprivation of rights under color of law, in violation of 18 U.S.C. §§ 242 and 2, for willfully depriving George Floyd of the right to be free from defendant Chauvin's use of unreasonable force, resulting in bodily injury and death (Count 1). Defendants Thao and Kueng are separately charged with violation of § 242 for willfully failing to intervene to stop co-defendant Chauvin's use of unreasonable force, resulting in Mr. Floyd's bodily

injury and death (Count 2). All four defendants are also charged with violating § 242 by willfully failing to aid George Floyd, thereby acting with deliberate indifference to a substantial risk of harm to Mr. Floyd, and resulting in his bodily injury and death (Count 3).

Upon unopposed motions by the United States (*see* ECF Nos. 44, 52), the Court entered an order designating the case as complex under the Speedy Trial Act. ECF No. 56. Pursuant to a Protective Order Governing Discovery (*see* ECF No. 60), the government made timely disclosures to the defense. The disclosures were voluminous, totaling more than 370 gigabytes of data, and comprised of documents as well as audio and video evidence. While not yet required by the various rules governing discovery or Court order, the government has disclosed to the defense materials subject to eventual production pursuant to the Jencks Act and Fed. R. Evid. 404(b). The defendants have filed pretrial motions, which are addressed below.

## II.  Response to Motions

### A.  Motions for Discovery and Inspection: ECF Nos. 68 (Kueng), 72 (Thao), and 97 (Chauvin).

Defendants Chauvin, Thao, and Kueng move the Court for discovery pursuant to Fed. R. Crim. P. 16. The government has no objection to providing Rule 16 discovery to defendants. The United States has complied, and will continue to comply, with Fed. R. Crim. P. 16(a)(1)(A)-(F), thereby rendering Defendant's motion moot with respect to such items. As described above, the United States has already provided or made available a noteworthy volume of written and electronic disclosures and understands its continuing

obligations with respect to discovery under the applicable rules. The government will continue to disclose additional materials as they are available.

The United States objects to any discovery order that exceeds the requirements of Rule 16, and specifically objects to orders for disclosures that are not required by the rules or orders for immediate disclosure of information not required to be immediately disclosed. This includes but is not limited to Jencks Act material, 404(b) information, government witness lists, grand jury information, and expert opinions—each of which is dealt with more specifically below. Rule 16 is the only vehicle for discovery in a criminal case, and courts have held consistently that there is no general constitutional right to discovery in a criminal case. *See United States v. Bursey*, 429 U.S. 545, 559 (1977). The government's demonstrated willingness to voluntarily produce significant disclosures early should not lead to an order that it do so. As noted above, the government is aware of its continuing duty to disclose and will comply with its discovery obligations in the time and manner required by the rules and Court order.

## B.   Motions for Disclosure of *Brady* Material, *Giglio* Material and/or Evidence Favorable to the Defendant: ECF Nos. 66-67 (Kueng), 75 and 81 (Thao), and 93 (Chauvin).

Defendants Chauvin, Thao, and Kueng move the Court for an order compelling disclosure of evidence favorable to the defendants. The United States is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. The United States has complied, and will continue to comply, fully with those obligations. To the extent evidence exists that is both favorable to

3

any defendant and material to either guilt or punishment, the evidence will be, or already has been, disclosed.

The United States objects to Defendants Kueng and Chauvin's motion for production of *Giglio* material immediately, and in no case less than one month before trial. *See* ECF No. 67 at 1. Disclosure of impeachment material is timely if it is produced in compliance with the requirements of the Jencks Act, *see, e.g.*, *United States v. Librach*, 520 F.2d 550, 554 (8th Cir. 1975); *United States v. Eisenberg*, 469 F.2d 156, 160 (8th Cir. 1972), which expressly provides in relevant part that statements or reports made by a prospective government witness—to the extent they are not exculpatory—are not subject to "subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). *See United States v. Sturdivant*, 513 F.3d 795, 803 (8th Cir. 2008) (recognizing that government cannot be compelled to produce Jencks Act material until after witness has testified at trial on direct examination).

Finally, while the United States understands its obligations under *Giglio* and *Brady* to disclose certain other impeachment evidence, if any, for its witnesses, it declines to provide any such material with respect to persons who will not be called as witnesses, to the extent such a request is beyond the scope of *Brady* and its progeny. *See Eisenberg*, 469 F.2d at 160; *United States v. Presser*, 844 F.2d 1275, 1283-85 (E.D.N.Y. 2000).

### C. Motions for Discovery of Expert Witness Testimony: ECF Nos. 74 (Thao), 97-98 (Chauvin).

Defendants Chauvin and Thao move the Court for an order pursuant to Rule 16(a)(1)(E) requiring the government to disclose a written summary of any expert witness

the government intends to use under Fed. R. Evid. 702, 703, and 705. The government is aware of its obligations and will fully comply with Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, Rules 702, 703, and 705 of the Federal Rules of Evidence, and any order issued by the Court regarding expert testimony. Along these lines, the parties have filed a joint motion for expert disclosure and notice of intent to seek an expert scheduling order. *See* ECF No. 91 (filed August 3, 2021). That submission notifies the Court that all parties anticipate offering expert testimony, moves the Court for reciprocal expert disclosures, and notifies the Court that the parties anticipate seeking an expert scheduling order after a trial date in this matter has been set by the Court and after the parties have had a chance to meet and confer in hopes of proposing a joint scheduling request. *Id*. at 1. In light of that joint filing, the defense request in this regard is moot.

### D. Motions for Early Disclosure of Jencks Act Material: ECF Nos. 65 (Kueng), 80 (Thao) and 95 (Chauvin).

Defendants Chauvin, Thao, and Kueng move the Court for an order requiring the government to provide early disclosure of Jencks Act materials to defendants. The government objects to this motion. The Eighth Circuit has repeatedly and consistently held in this Circuit and District that the government cannot be compelled to make pretrial disclosure of Jencks material. *See, e.g., United States v. Douglas*, 964 F.2d 738, 741 (8th Cir. 1992); *United States v. White*, 750 F.2d 726 (8th Cir. 1984); *United States v. Finn*, 919 F. Supp. 1305, 1315 n.3 (D. Minn. 1995). Accordingly, the United States objects to any court-ordered disclosure of such statements prior to the witnesses' testimony and anticipates that the parties will agree to a reciprocal date for such disclosures. Nevertheless,

the government has already provided a significant volume of Jencks Act materials to the defendants.

### E.   Motions for Pretrial Disclosure of 404(b) Evidence: ECF Nos. 63 (Kueng), 76 (Thao) and 92 (Chauvin).

Defendants Chauvin, Thao, and Kueng move the Court for disclosure of any prior "bad act" or "similar course of conduct" evidence the government intends to offer at trial. Defendants Chauvin and Kueng move for "immediate" disclosure of such evidence, along with immediate identification of the witnesses through whom such evidence will be presented at trial. ECF No. 92 at 1; ECF No. 63 at 1. The government has already made significant disclosures of such evidence, is fully aware of its disclosure and notice obligations under Fed. R. Evid. 404, and intends to comply fully with those obligations.

The issue before the Court is *when* disclosures and notice under Rule 404(b) must be made. The government is required to "provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown." Fed. R. Evid. 404(b). The government objects to any requests for "immediate" disclosure of 404(b) evidence or identification of the witnesses through whom such evidence will be presented at trial. Immediate disclosure is not contemplated by the rules or the case law. *See, e.g.*, *United States v. Harris*, Crim. No. 20-98 (SRN/TNL), 2021 WL 3013145, at *1-2 (D. Minn. July 16, 2021); *United States v. Garcia*, Crim. No. 20-230(2) (ECT/TNL), 2021 WL 651431, at *4-*5 (D. Minn. Feb. 19, 2021).

The government has no objection to providing Rule 404(b) notice and evidence 30 days before trial, to the extent such evidence has not already been disclosed by that date.

The government will thereby provide sufficient 404(b) notice and evidence to enable the defendants to prepare for trial. Moreover, any notice will demonstrate "the permitted purpose for which the [government] intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B).

The United States respectfully requests that any order regarding Rule 404 evidence be strictly drawn to require no more than what is encompassed by the Rule. Specifically, Rule 404(b) does not encompass acts that are "intrinsic" to the charged offense. *See* Fed. R. Evid. 404 advisory committee's notes, 1991 Amendments. If conduct of a defendant is an "intrinsic" part of a charged offense but could nonetheless be considered a "bad act," Rule 404(b) does not contemplate that notice of such evidence need be given. *See United States v. Ruiz-Chavez*, 612 F.3d 983, 988 (8th Cir. 2010); *see also United States v. Beltz*, 385 F.3d 1158, 1162 (8th Cir. 2004) ("Evidence that is relevant to the crime charged is not other crimes evidence."); *United States v. Adediran*, 26 F.3d 61, 63 (8th Cir. 1994) (standards applicable to evidence considered under Rule 404(b) do not apply to such "inextricably intertwined" evidence).

"Evidence of other wrongful conduct is considered intrinsic when it is offered for the purpose of providing the context in which the charged crime occurred." *Ruiz-Chavez*, 612 F.3d at 988 (quotation omitted). This distinction is important because any defendant could claim that the United States must give notice of every "bad act" it intends to introduce, whether or not intrinsic to the charged offense; this is not required by the Rule. *See United States v. Maxwell*, 643 F.3d 1096, 1100 (8th Cir. 2011) (holding that Rule 404(b) "does not extend to evidence of acts which are 'intrinsic' to the charged offense . . .

because such acts are not truly separate bad acts that show propensity, but are intrinsic evidence which is inextricably intertwined with the crime charged"); *United States v. O'Dell*, 204 F.3d 829, 833 (8th Cir. 2000) (noting "firmly established" case law that "Rule 404(b) does not apply" to non-extrinsic "crimes or acts which are 'inextricably intertwined' with the charged crime").

### F. Motions for Government Agents to Retain Rough Notes and Evidence: ECF. Nos. 73 (Thao) and 99 (Chauvin).

Defendants Chauvin and Thao move the Court for an order requiring any law enforcement officer to preserve and retain for inspection all rough notes and video or audio tapes gathered as part of the investigation of this case. The government does not object to requiring the law enforcement officials involved in the investigation of this case to retain and preserve their rough notes, and agents involved in the investigation have already been instructed to keep and preserve the same until and through trial in this matter. To the extent the defendants make a general preservation demand, the United States is cognizant of its discovery obligations and will comply with those duties. Those obligations necessarily encompass not destroying relevant and actual evidence—tangible or otherwise. The United States objects to defendants' requests to the extent they demand a general preservation order that goes beyond the scope of Rule 16, *Brady*, *Giglio*, and/or the Jencks Act.

Additionally, the government objects to any order concerning the disclosure of rough notes—including by making them available for review. Rough notes are not considered statements within the meaning of the Jencks Act, 18 U.S.C. § 3500. *United States v. Redding*, 16 F.3d 298, 301 (8th Cir. 1994) (concluding that rough notes were not

a statement of witness as there was no evidence witness signed, adopted or approved of notes); *United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (defendant not entitled to discover government agents' general notes from witness interviews). Nor are agent rough notes generally discoverable as "statements" of the agent. *See United States v. Simtob*, 901 F.2d 799, 808-09 (9th Cir. 1990) (defendant not entitled to discover testifying agent's rough notes of investigation as Jencks Act material when the notes merely represented pieces of information put in writing to refresh memory); *United States v. Williams*, 875 F.2d 846, 853 (11th Cir. 1989) (defendant not entitled to discover agents' personal notes, contact sheets, witness lists, and summaries of non-testifying witnesses' statements when bulk of material not relevant to subject matter of agents' testimony).

To the extent any video or audio tapes are discoverable pursuant to the Rules of Evidence or as *Brady* or *Giglio* evidence, or may later be discoverable pursuant to the Jencks Act, the government has already produced or will retain such evidence.

### G.   Motions for Disclosure of Grand Jury Minutes and Transcripts: ECF Nos. 64 (Kueng), 82 (Thao) and 94 (Chauvin).

Defendants Chauvin, Thao, and Kueng move the Court for an order directing the government to disclose the minutes and transcripts of the grand jury. The government has already disclosed the vast majority of grand jury transcripts to the defense and will produce the grand jury transcript of any witness it intends to call at the motions hearing or at trial. The government objects to an order directing it to produce any transcript in advance of the corresponding witness's testimony, except to the extent provided for in the government's response to the defendant's Motion for Early Disclosure of Jencks Act material.

### H.  Motions for List of Government Witnesses: ECF Nos. 62 (Kueng), 79 (Thao) and 96 (Chauvin).

Defendants Chauvin, Thao, and Kueng move the Court for an order requiring the government to produce a list of all individuals it intends to call as a witness at trial, whether for the case in chief or in rebuttal, including the name and address of each potential witness. Defendants Chauvin and Kueng request that the order require this information be provided one month in advance of trial, while defendant Thao requests that the disclosure be made six months before trial. The government is under no obligation to provide this information to the defense prior to trial. *See United States v. Miller*, 698 F.3d 699, 704 (8th Cir. 2012) (commenting that in 1975 Congress amended Rule 16 to eliminate a requirement that the government disclose its witness list prior to trial). The United States does not yet know which witnesses it intends to call at trial. The United States agrees to provide, at least 30 days prior to trial, a potential witness list identifying the witnesses it may call in its case-in-chief, and expressly asks that a similar and reciprocal disclosure obligation be ordered for each defendant.

### I.  Motions for Participation by Counsel in Voir Dire: ECF Nos. 85 (Thao) and 101 (Chauvin).

Defendants Chauvin and Thao move the Court for an order permitting their attorneys to supplement the Court's voir dire examination by further inquiring as to what stereotypes a prospective juror might maintain and the impact caused by these beliefs on a juror's impartiality. The United States agrees that some form of attorney voir dire is likely appropriate in this case, as well as some form of pretrial juror questionnaire. However, the United States objects to these motions as premature, as counsel's participation in voir dire

is a matter for the District Court to address at or shortly before trial. This motion should be denied subject to counsel re-asserting the motion to the District Court at the appropriate time.

### J.   Motion for Bill of Particulars: ECF No. 83 (Thao).

Defendant Thao moves the Court for an order directing the government to file a bill of particulars. Defendant Thao specifically asks that the government provide specific notice of: (1) how his particular actions deprived Mr. Floyd of the right to be free from unreasonable search and seizure and how his actions resulted in or contributed to the bodily injury or death of Mr. Floyd; (2) how he willfully failed to aid Mr. Floyd or how he acted with deliberate indifference to a substantial risk of harm to Mr. Floyd; and (3) what the substantial risk of harm to Mr. Floyd was that he allegedly ignored. ECF No. 83 at 1-2.

The purpose of a bill of particulars is to inform a defendant of the nature of the charges against him and to prevent or minimize the element of surprise at trial. *United States v. Beasley*, 688 F.3d 523, 532 (8th Cir. 2012). A bill of particulars is not intended to provide a defendant with evidentiary detail or discovery regarding the government's case. *United States v. Hester*, 917 F.2d 1083, 1084 (8th Cir. 1990). Rather, it is required only when necessary to inform a defendant of the charges against him with sufficient clarity to enable him to prepare his defense, to minimize the element of surprise at trial, and to enable him to protect himself against a second prosecution for an inadequately described offense. *United States v. Stephenson,* 924 F.2d 753, 762 (8th Cir. 1991).

Rule 7 requires a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Supreme Court defined

what Rule 7(c)(1) required in *Russell v. United States*, 369 U.S. 749 (1962). An indictment is considered sufficient if it contains enough information that the defendant can understand the charges, prepare a defense, and claim double jeopardy where appropriate. *Id.* at 762; *see United States v. Peterson*, 867 F.2d 1110 (8th Cir. 1989); *United States v. United Imports Corp.*, 165 F. Supp. 969 (8th Cir. 2000); and *United States v. Critzer*, 951 F.2d 306 (11th Cir. 1992).

Indictments may track the statutory language, or adopt other language, as long as the indictment sets forth the essential elements of the charged offense. *Hamling v. United States*, 418 U.S. 87 (1974); *Russell*, 369 U.S. at 765. Charging the language that "tracks" the statutory language of an offense, as long as the statute includes all of the essential elements, is legally sufficient. *United States v. Johnson*, 377 F. Supp. 2d 686, 688 (8th Cir. 2005); *United States v. Devoll*, 39 F.3d 575 (5th Cir. 1994); *United States v. Zavala*, 839 F.2d 523 (9th Cir. 1988). In *United States v. White*, the court held "we will find an indictment insufficient only if an essential element 'of substance' is omitted." 241 F.3d 1015, 1021 (8th Cir. 2001); *see United States v. Luros*, 243 F. Supp. 160 (8th Cir. 1965).

The Indictment in this case informs the defendants of the nature of the charges against them and provides them the opportunity to prepare a defense at trial. Defendant Thao is named in two counts of the Indictment. Count 2 charges him, along with co-defendant J. Alexander Kueng, with deprivation of rights under color of law, in violation of 18 U.S.C. § 242. Count 2 alleges that on May 25, 2020, defendant Thao "while acting under color of law, willfully deprived George Floyd of the right, secured and protected by the Constitution and laws of the United States, to be free from an unreasonable seizure,"

by willfully failing to intervene to stop co-defendant Chauvin's use of unreasonable force. *See* ECF No. 1 at 2. The Indictment further describes that unreasonable force. *Id*. at 1-3. Furthermore, Count 2 alleges that defendant Thao's offense "resulted in bodily injury to, and the death of, George Floyd." *Id*. at 3.

Count 3 charges defendant Thao with deprivation of rights under color of law, in violation of 18 U.S.C. § 242, along with each of his co-defendants. ECF No. 1 at 3. Count 3 alleges that on May 25, 2020, defendant Thao "while acting under color of law, willfully deprived George Floyd of the right, secured and protected by the Constitution and laws of the United States, not to be deprived of liberty without due process of law, which includes an arrestee's right to be free from a police officer's deliberate indifference to his serious medical needs." *Id*. at 3. The Indictment further describes that "[s]pecifically, the defendants saw George Floyd lying on the ground in clear need of medical care, and willfully failed to aid Floyd, thereby acting with deliberate indifference to a substantial risk of harm to Floyd[]" and that "[t]his offense resulted in bodily injury to, and the death of, George Floyd." *Id*. As described above, a large volume of reports, video, and other evidence provided in discovery clearly demonstrate these purposeful acts and purposeful omissions.

Further, the charges track the statutory language and include all the elements of each charge. None of the essential elements were omitted.

For these reasons, the Indictment fully complies with Fed. R. Crim. P. 7(c)(1) in that it contains a "plain, concise, and definite written statement of the essential facts constituting the offense[s] charged." Moreover, the defendants have been provided with

voluminous discovery, including but not limited to video evidence that documents much of the case against each of them. Accordingly, defendant Thao has failed to show any need for a bill of particulars. *See United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009) (holding that the indictment and disclosures obviated the need for a bill of particulars). Defendant Thao's motion should be denied.

### K. Motion for Disclosure of Post-Conspiracy Statements of Co-Defendants: ECF No. 84 (Thao).

Defendant Thao moves the Court for an order compelling the government to give notice and disclosure of any intent to use or refer to statements or confessions of any defendant or unindicted co-conspirator, along with disclosure of such statements. The government has already provided each defendant with all known discovery materials concerning any post-arrest statements of that particular defendant. The government will provide, 14 days prior to trial, reports detailing any post-arrest statements made by defendants that it intends to introduce in its case-in-chief, as well as statements of unindicted co-conspirators, if the government plans on calling such witnesses.

To the extent that defendant Thao is raising a potential issue under *Bruton v. United States*, 391 U.S. 123 (1968), this issue is not ripe for the Court at this time, and thus, the defendant's motion should be denied without prejudice. It is unclear which, if any, defendants will proceed to trial and which statements, if any, will be introduced by the government. The United States objects to this request to the extent it imposes upon the United States any affirmative duty other than what may be imposed by *Bruton* and its progeny.

### L.   Motions for Severance: ECF Nos. 69 (Kueng) and 78 (Thao).

Defendants Thao and Kueng move the Court for an order pursuant to Rule 14 of the Federal Rules of Criminal Procedure, granting them a severance from defendant Chauvin. A ruling on these motions should be reserved or, alternatively, the motions should be denied without prejudice. As noted in both defendants' meet and confer statements, they agree that the motions as filed are premature because the record is insufficiently developed as to why severance from defendant Chauvin is appropriate. *See* ECF Nos. 71 and 102. In essence, the motions could not be granted as presently filed. At the time these motions become sufficiently ripe, the United States anticipates that defendants will seek relief from the Court and the parties will provide additional briefing as necessary.

To the extent the Court requires a more substantive response at this time, the defendants are properly joined and have not met the high burden required to demonstrate that severance is appropriate.

Rule 8 of the Federal Rules of Criminal Procedure allows for joinder of defendants and counts in criminal cases. Rule 8(a) provides for joinder of offenses if the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Rule 8(b) provides for joinder of defendants when "they are alleged to have participated in the same act or transaction, or in the same series or acts or transactions . . . ."  Further, "The defendants may be charged in one or more counts together or separately" and "[a]ll defendants need not be charged in each count." *Id.*

"When a defendant moves for a severance, a district court must first determine whether joinder is proper under Fed. R. Crim. P. 8. If joinder is proper, the court still has discretion to order a severance under Fed. R. Crim. P. 14. These rules are to be 'liberally construed in favor of joinder.'" *United States v. Darden*, 70 F.3d 1507, 1526 (8th Cir. 1995) (internal citations omitted) (quoting *United States v. Rimell*, 21 F.3d 281, 288 (8th Cir. 1994)). "There is a presumption against severing properly joined cases, and such presumption is a 'strong' one." *United States v. Cooper*, No. 06-CR-35-1-LRR, 2006 WL 2095517, at *2 (N.D. Iowa July 26, 2006) (quoting *United States v. Delpit*, 94 F.3d 1134, 1143 (8th Cir. 1996)).

Here the defendants, each former police officers, are alleged to have together participated in a series of acts and omissions under color of law during an event that took place over less than 30 minutes on May 25, 2020. Those acts and omissions culminated in the deprivation of Mr. Floyd's constitutional rights. Moreover, all four of the defendants are charged with willfully acting with deliberate indifference to a substantial risk of harm to Mr. Floyd as a result of their acts and omissions together during the same event on May 25, 2020. ECF. No. 1 at 3. The same substantive evidence will be used at trial against each of these co-defendants.

The Supreme Court has repeatedly noted that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together" because joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Indeed, "[i]ndicted co-conspirators should ordinarily be tried together, especially where proof of

the conspiracy overlaps." *United States v. Williams*, 97 F.3d 240, 243 (8th Cir. 1996) (citing *United States v. Pou*, 953 F.2d 363, 368 (8th Cir. 1992)).

Proof of the individual acts in violation of each of the counts in the Indictment will be overlapping and clearly militate against severance. *See Richardson v. Marsh*, 481 U.S. 200, 210 (1987) (noting that requiring separate proceedings in every case of joint crimes would impair efficiency and fairness of the criminal justice system, forcing prosecutors to present the same evidence, and victims and witnesses to experience inconvenience and repeat testimony, and randomly favor last-tried defendants). Rather, "[p]ersons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together, even if each defendant did not participate in or was not charged with each offense." *United States v. Gravatt*, 280 F.3d 1189, 1191 (8th Cir. 2002) (citing *United States v. Jones*, 880 F.2d 55, 62-63 (8th Cir. 1989)). Moreover, where "the indictment invites joint proof . . . the prima facie validity of joinder is shown." *United States v. O'Connell*, 841 F.2d 1408, 1432 (8th Cir. 1988). The defendants are properly joined in the Indictment and they should be tried together. Their general severance arguments are meritless and any motion in support of that action should be denied.

Defendant Kueng asserts that joinder "would cause confusion and prejudice" and points to "Mr. Chauvin's level of culpability" as a basis for severance. ECF No. 69 at 1. Defendant Thao claims there would be "insurmountable difficulty distinguishing the alleged acts of each defendant from the alleged acts of his co-defendants" and a risk of otherwise "inadmissible evidence" in a separate trial being used in a joint trial. ECF No.

78 at 1. Without support, he also claims the Indictment counts are improperly joined and that his Fifth Amendment rights will be violated. *Id*. at 2.

First, these arguments are speculative and unsupported. Furthermore, they ignore the averments in the Indictment, which point to the unreasonable use of force by co-defendant Chauvin, as observed by defendants Thao and Kueng, who in turn contemporaneously failed to intervene to stop Chauvin's unreasonable force (Count 2) and acted with deliberate indifference to a substantial risk of harm to Mr. Floyd (Count 3). The facts and circumstances demonstrating Chauvin's unreasonable use of force will demonstrate defendants Thao and Kueng's failures to intervene and deliberate indifference.

Claims that evidence could only be introduced against other co-defendants, or claims of jury difficulty in distinguishing evidence between counts, are speculative at best. The government cannot identify such evidence as defendants plead with no such particularity.

To "warrant severance a defendant must show 'real prejudice,' that is, 'something more than the mere fact that he would have had a better chance for acquittal had he been tried separately.'" *United States v. Mickelson*, 378 F.3d 810, 817-18 (8th Cir. 2004) (quoting *United States v. Oakie*, 12 F.3d 1436, 1441 (8th Cir. 1993)). Indeed, to justify severance, "[t]he necessary prejudice must be 'severe or compelling.'" *United States v. Pherigo*, 327 F.3d 690, 693 (8th Cir. 2003). Moreover, "there is a strong presumption against severing properly joined counts." *United States v. McCarther*, 596 F.3d 438, 442 (8th Cir. 2010) (citing *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005)). And "less

drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

The Eighth Circuit has "said many times that it will be the rare case, if ever, where a district court should sever the trial of alleged coconspirators." *United States v. Frazier*, 280 F.3d 835, 844 (8th Cir. 2002). While not charged in a conspiracy, the defendants committed their unlawful actions in concert. This is not that "rare case," and defendants' reasons (or inferred reasons) do not suffice to establish even the potential of real prejudice from a joint trial. Furthermore, "[s]everance is not required merely because evidence that is admissible only against some defendants may be damaging to others." *Mickelson*, 378 F.3d at 818. Nor is there any requirement in a joint trial that "the quantum of evidence of each defendant's culpability be equal." *United States v. Flores*, 362 F.3d 1030, 1042 (8th Cir. 2004). And any concern that evidence implicating one defendant may possibly prejudice another—to the extent such circumstances actually exist here—can be minimized by jury instructions to "view the evidence presented against [each defendant] as applicable only to [that defendant]." *United States v. Adams*, 401 F.3d 886, 895 (8th Cir. 2005); *see also United States v. Lee*, 374 F.3d 637, 647 (8th Cir. 2004) (affirming denial of motion to sever because defendant was charged with participating in same conspiracy as co-defendants and thus prejudicial spillover was insufficient to merit severance).

In addition, the Supreme Court has held that "[m]utually antagonistic defenses are not prejudicial *per se*" so as to require severance under Rule 14. *Zafiro*, 506 U.S. at 538. Rather, "'[a]ntagonistic' defenses require severance only when there is a danger that the

jury will unjustifiably infer that *this conflict alone demonstrates that both are guilty*." *United States v. Sandstrom*, 594 F.3d 634, 644 (8th Cir. 2010) (emphasis in original).

In any event, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538-39. As the Eighth Circuit has instructed, "[t]he risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions." *Mickelson*, 378 F.3d at 818.

Neither defendant Thao nor defendant Kueng can show even the potential for any unfair prejudice from a joint trial. The Indictment stems from the actions of these four co-defendants, together, on May 25, 2020. Their proffered reasons for severance are conjectural and could be raised in almost any case involving multiple defendants. Any legitimate potential risks defendants can raise will instead readily be addressed by the District Court through appropriate evidentiary rulings and jury instructions. Their motions for severance should be denied.

### M. Motions for Discovery and Inspection of Records of All Electrical Surveillance: ECF Nos. 77 (Thao) and 100 (Chauvin).

Defendants Chauvin and Thao move the Court for an order directing the government to disclose and allow inspection of all methods of electrical surveillance used by law enforcement in this case. The government is not aware of the use of any electronic surveillance used in connection with the investigation of the defendants concerning the current charges, particularly regarding wiretapping, GPS surveillance, radio transmission

interception, "triggerfish," or other means of electronic surveillance. Accordingly, these motions are moot.

**N. Motions to Strike Surplusage: ECF Nos. 70, 87 (Kueng) and 88-89 (Lane).**

Defendant Kueng moves the Court for an order striking paragraph 3 from the Indictment. ECF No. 70. Paragraph 3 reads, "Defendant J. Alexander Kueng was employed as a Minneapolis Police Department officer. He began working as an MPD officer in December 2019." ECF No. 1. Similarly, defendant Lane moves the Court for an order striking the second sentence of paragraph 4 of the Indictment, *see* ECF No. 88, which reads, "[Defendant Lane] began working as an MPD officer in December 2019." ECF No. 1.

Defendant Kueng argues that while paragraph 3 of the Indictment may be "technically accurate," it is "misleading and prejudicial because in reality Mr. Kueng had not yet completed his 3rd shift following his field training as a Minneapolis Police Officer." ECF No. 87 at 1. According to defendant Kueng, officers in field training, which defendant Kueng began in December 2019, are not "considered" to be officers by "the rank and file of the Minneapolis Police Department." ECF No. 87 at 1-2. Rather, they are referred to by "rank and file" officers as a "recruit" or a "boot." *Id.* at 2. Defendant Kueng argues that the statement regarding the length of his employment with the Minneapolis Police Department in the Indictment is misleading and prejudicial and will be unfairly prejudicial if it is presented to the jury in an "official court document." *Id.*

Defendant Lane, going one step farther than defendant Kueng, argues that the language of the second sentence of paragraph 4 of the Indictment is "*false* and prejudicial" because defendant Lane only started working as a police officer on May 21, 2020, and was

a "recruit" prior to that. ECF No. 89 at 1 (emphasis added). According to defendant Lane, the statement regarding the length of his employment with the Minneapolis Police Department in the Indictment is prejudicial because one of the main issues at trial will be his experience. *Id*.

Pursuant to Fed. R. Crim. P. 7(d), "upon the defendant's motion, the court may strike surplusage from the indictment or information." However, the Eighth Circuit has held that such motions should be granted in limited circumstances and "only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." *United States v. Michel-Galaviz*, 415 F.3d 946, 948 (8th Cir. 2005) (quoting *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962). Other courts have concluded that "if the language in the Indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be." *United States v. Lov-It Creamery*, 704 F. Supp. 1532, 1550-51 (E.D. Wis. 1989) (citing *United States v. Climatemp, Inc.*, 482 F. Supp. 376, 391 (N.D. Ill. 1979), *aff'd*, 705 F.2d 461 (7th Cir.1983)).

First, the first sentence of paragraph 3 of the Indictment should not be stricken because defendant Kueng has failed to provide any reason for such relief and because the government is required to prove defendant Kueng was acting under color of law at the time of the events alleged in the Indictment as to both Counts 2 and 3. Thus, striking the first sentence of paragraph 3—that defendant Kueng was employed as a Minneapolis Police Officer at all times relevant to the Indictment—would only serve to strike a statement articulating one of the elements of the crimes.

Second, the government intends to prove at trial that defendants Kueng and Lane began working as MPD officers in 2019. Remarkably, defendant Kueng himself admits that the language used in the Indictment is "technically accurate." Regardless of the colloquial language used by MPD officers to refer to their newest colleagues, it does not change the fact that former officers Kueng and Lane were, in fact, officers of the Minneapolis Police Department beginning in December 2019.

To the extent defendants Kueng and Lane contest the accuracy of the statements made in paragraphs 3 and 4 of the Indictment, "whether the allegations in an indictment are 'accurate or truthful' is a matter for the jury to decide" and a court "cannot determine, on a motion to strike, 'whether the [allegations] in the indictment are true.'" *United States v. Ledbetter*, No. 2:14-CR-127, 2015 WL 5029249, at *1 (S.D. Ohio Aug. 26, 2015) (citing *United States v. Tomero*, 496 F. Supp. 2d 253, 255 (S.D.N.Y. 2007)). Additionally, any unfair prejudice that remains can be eliminated through a simple instruction to the jury that the indictment is not evidence, *see United States v. Figueroa,* 900 F.2d 1211, 1218 (8th Cir.1990), or by not reading the entire indictment to the jury, *see United States v. Griffin,* No. CR 15-160 (DWF/FLN), 2016 WL 912180, at *4 (D. Minn. Mar. 7, 2016). An order striking this information from the Indictment would be premature at this time.

Third, the challenged statements regarding the duration of defendants' employment with the Minneapolis Police Department are relevant to the charges against defendant Kueng in Counts 2 and 3 and against defendant Lane in Count 3. The government will be required to prove at trial that the defendants acted willfully—that is, that they intentionally committed the constitutional violations alleged in the Indictment knowing that a reasonable

officer would not have engaged in the constitutional violations. *See United States v. Harrison*, 671 F.2d 1159, 1161-62 (8th Cir. 1982). The fact that defendants Kueng and Lane were actively employed as officers with the Minneapolis Police Department—whether they were referred to by other officers as "recruits" or "officers"—for approximately five months before the events alleged in the Indictment, is relevant to their knowledge of the reasonableness of the officer conduct in this case.

Finally, it is difficult to imagine how an accurate and straightforward statement of the defendants' dates of employment could be considered "inflammatory" or unfairly "prejudicial." *See United States v. Bou*, No. 85 CR. 1165 (LLS), 1986 WL 4081, at *3 (S.D.N.Y. Mar. 28, 1986) (denying motion to strike statement from indictment that defendant, a member of the Federal Protective Service, was a "police officer," where defendant argued the characterization was inaccurate, because such a statement is "not unduly inflammatory and prejudicial").

For all of these reasons, defendants Kueng and Lane's motions to strike surplusage should be denied.

### O.   Motion to Join Co-Defendants Pretrial Motions: ECF Nos. 90, 106 (Lane).

Without specifying which motions he sought to join, defendant Lane initially moved the Court to join all the pre-trial motions of his co-defendants. *See* ECF No. 90. Upon further order of the Court, defendant Lane filed a letter identifying three motions filed by co-defendant Kueng that he wishes to join: (1) the motion to sever; (2) the motion for disclosure of *Brady* material; and (3) the motion for disclosure of *Giglio* material. *See* ECF

No. 106. The United States herby incorporates its responses to those motions as stated herein.

### III.   <u>Conclusion</u>

WHEREFORE, the government respectfully asks this Honorable Court to enter an Order consistent with the government's responses.

Dated: August 17, 2021                          Respectfully submitted,


W. ANDERS FOLK                          KRISTEN CLARKE
Acting United States Attorney              Assistant Attorney General
                                                        Civil Rights Division

*/s/ W. Anders Folk*                          */s/ Samantha Trepel*
BY:   W. ANDERS FOLK                  BY:   SAMANTHA TREPEL
Acting U.S. Attorney                        Special Litigation Counsel
Attorney ID No. 0311388                  Attorney ID No. 992377 DC