UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 21-CR-108 (PAM/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA | PLEA AGREEMENT AND |
| v. | SENTENCING STIPULATIONS |
| (1) DEREK MICHAEL CHAUVIN | |

The United States of America and DEREK MICHAEL CHAUVIN ("the defendant") agree to resolve this case on the terms and conditions that follow. This Plea Agreement binds only the defendant, the United States Attorney's Office for the District of Minnesota, and the Civil Rights Division of the U.S. Department of Justice. This Agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The defendant agrees to plead guilty to Count One of the Indictment and Count One of the Information, each of which charge the defendant with Deprivation of Rights, in violation of 18 U.S.C. § 242. The defendant fully understands the nature and elements of the crimes with which he has been charged. The defendant's expectation is that, as a result of entering into this Agreement, he will serve his sentence of imprisonment in federal custody. At the time of sentencing, the United States agrees to move to dismiss, as to this defendant, Count Three of the Indictment in this case, and Counts One and Two of the Indictment in Case No. 21-CR-109.

1

SCANNED
DEC 15 2021
U.S. DISTRICT COURT ST. PAUL

2. **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Count One of the Indictment and Count One of the Information. In pleading guilty, the defendant admits that the following facts are true, and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines. The defendant acknowledges that the following facts are only a partial summary of the government's evidence:

a. **United States v. Chauvin, et al. Indictment**

On or about May 25, 2020, in the State and District of Minnesota, the defendant, while acting under color of law, and while aided and abetted by other officers, willfully deprived George Perry Floyd, Jr., of his constitutional rights—specifically, the right to be free from an unreasonable seizure, which includes the right to be free from the use of unreasonable force by a police officer. The defendant held his left knee across Mr. Floyd's neck, back, and shoulder, and his right knee on Mr. Floyd's back and arm. As Mr. Floyd lay on the ground, handcuffed and unresisting, the defendant kept his knees on Floyd's neck and body, even after Mr. Floyd became unresponsive. This offense resulted in bodily injury to, and the death of, George Floyd.

Specifically, the defendant admits that on May 25, 2020, he was on duty and acting under color of law as a patrol officer for the Minneapolis Police Department ("MPD") in the City of Minneapolis and District of Minnesota. Through his experience as an MPD patrol officer, the defendant was familiar with MPD policies and training regarding the authorized use of force, including the requirement that an officer use force only in

2

proportion to a subject's resistance and the requirement that an officer stop using force when a subject is not resisting. The defendant was also familiar with MPD policy requiring officers to intervene, regardless of their rank or seniority, if they observe another officer using inappropriate force. The defendant was also aware of MPD policy and training that once an arrestee is in custody, the arrestee is the officer's responsibility to protect, and accordingly, officers are required to provide emergency medical aid to an arrestee who needs it, including CPR (immediately if there is no pulse) and other basic first aid, even while awaiting Emergency Medical Services (EMS). Finally, the defendant was trained that if an arrestee is in the prone position, that position may make it more difficult to breathe, and thus, officers should move that arrestee to a side recovery or seated position.

The defendant further admits that he did not, at any time on or before May 25, 2020, threaten or force Officers Tou Thao, J. Alexander Kueng, or Thomas Lane to disregard or fail to comply with MPD policies and procedures.

On the evening of May 25, 2020, the defendant and his partner, Officer Thao, responded to a dispatch call regarding a counterfeit bill. Officers Kueng and Lane were already on scene. After an attempt to seat Mr. Floyd in a squad car, the defendant and Officers Kueng and Lane maneuvered Mr. Floyd, who was handcuffed and requesting to be placed on the ground, out of the vehicle and face-down on the street. Mr. Floyd remained restrained, prone and handcuffed on the ground for approximately ten minutes. During this entire period, the defendant held his left knee on Mr. Floyd's neck, back, and shoulder area and his right knee on Mr. Floyd's left arm and upper back. During the entire

time, Officers Kueng and Lane aided the defendant in restraining Mr. Floyd. During much of this time, Officers Kueng and Lane physically assisted the defendant in restraining Mr. Floyd.

After the initial restraint, Mr. Floyd stopped resisting officers. The defendant admits that no later than the time the officers decided not to apply the hobble to Mr. Floyd, the defendant's continued use of force became objectively unreasonable and excessive based on a totality of the circumstances. After that point, the defendant continued his unreasonable restraint of Mr. Floyd until after the paramedics arrived.

The defendant admits that in using this unreasonable and excessive force, he acted willfully and in callous and wanton disregard of the consequences to Mr. Floyd's life. The defendant knew that what he was doing was wrong, in part, because it was contrary to his training as an MPD officer. The defendant chose to continue his use of force even though he knew from MPD policy and training that once Mr. Floyd was compliant, the defendant should have gotten off of him and moved him into a side recovery or seated position.

The defendant also knew there was no legal justification to continue his use of force because he was aware that Mr. Floyd not only stopped resisting, but also stopped talking, stopped moving, stopped breathing, and lost consciousness and a pulse. The defendant chose to continue applying force even though he knew Mr. Floyd's condition progressively worsened. The defendant also heard Mr. Floyd repeatedly explain that he could not breathe, was in pain, and wanted help.

Likewise, the defendant knew that what he was doing was wrong—that continued force was no longer appropriate and that it posed significant risks to Mr. Floyd's life—based on what he observed and heard about Mr. Floyd. The defendant was aware that civilian bystanders repeatedly asked him to check for a pulse, stated that Mr. Floyd was unresponsive and not breathing, and asked him to get off of Mr. Floyd. The defendant also heard Officer Kueng, who checked Mr. Floyd at least twice for a pulse, twice say that he could not find one. The defendant did not observe Officer Thao or Officer Keung do or say anything to try to get the defendant off of Mr. Floyd. The defendant heard Officer Lane twice ask whether Mr. Floyd should be rolled on his side. The defendant did not hear or observe Officer Lane press the point, and did not hear or observe Officer Lane say or do anything else to try to get Officer Kueng and the defendant off of Mr. Floyd. The defendant did not ask or direct Officer Kueng to discontinue his restraint of Mr. Floyd.

In addition to willfully depriving Mr. Floyd of his constitutional right to be free from the use of unreasonable force by a police officer, as detailed above, the defendant also willfully violated Mr. Floyd's constitutional right not to be deprived of liberty without due process of law, which includes an arrestee's right to be free from a police officer's deliberate indifference to his serious medical needs. The defendant admits that he failed to render medical aid to Mr. Floyd, as he was capable of doing, and trained and required to do. The defendant heard bystanders offering to provide medical aid and did not permit the bystanders to approach Mr. Floyd. At the time the defendant failed to render medical aid to Mr. Floyd, the defendant saw Mr. Floyd lying on the ground, in serious medical

need, and eventually unconscious and pulseless, and recognized Mr. Floyd was in clear need of medical aid. At no point during the entire period that Mr. Floyd was on the ground did the defendant or anyone else move Floyd onto his side, start CPR, or provide medical aid of any kind to Mr. Floyd. The defendant's failure to render medical aid resulted in Mr. Floyd's bodily injury and death.

The defendant agrees that the appropriate base offense level is second-degree murder because he used unreasonable and excessive force that resulted in Mr. Floyd's death, and he acted willfully and in callous and wanton disregard of the consequences to Mr. Floyd's life. The defendant admits that his willful use of unreasonable force resulted in Mr. Floyd's bodily injury and death because his actions impaired Mr. Floyd's ability to obtain and maintain sufficient oxygen to sustain Mr. Floyd's life.

    b.   **United States v. Chauvin Information**

On or about September 4, 2017, in the State and District of Minnesota, the defendant, while acting under color of law, willfully deprived Juvenile 1 of his constitutional rights—specifically, the right to be free from an unreasonable seizure, which includes the right to be free from the use of unreasonable force by a police officer. First, the defendant, without legal justification, held Juvenile 1 by the throat and struck Juvenile 1 multiple times in the head with a dangerous weapon, resulting in bodily injury to Juvenile 1. Second, the defendant held his knee on the neck, shoulders, and upper back of Juvenile 1 even after Juvenile 1 was lying prone, handcuffed, and unresisting, resulting in bodily injury to Juvenile 1.

6

Specifically, the defendant admits that on September 4, 2017, he was on duty and acting under color of law as a patrol officer for MPD in the City of Minneapolis and District of Minnesota. The defendant and a second MPD officer who was being trained by the defendant that day responded to a domestic assault call at a residence in Minneapolis. Upon arrival, they spoke with the caller who reported that her 14-year-old son, Juvenile 1, had assaulted her. After the officers took a report from the mother, she showed them to a bedroom where Juvenile 1 was lying on his stomach on the floor, playing with his phone.

At no point in the encounter did Juvenile 1 use force or threaten the use of force against the officers. Throughout the encounter, the defendant was aware that Juvenile 1 was 14 years old and that Juvenile 1 made no aggressive moves towards the officers.

As the officers began to take Juvenile 1 into custody, Juvenile 1 attempted to explain the situation with his mother and pulled away. After this initial encounter, the defendant used unreasonable and excessive force on Juvenile 1 by striking him in the head multiple times with a police-issue flashlight. The defendant then pinned Juvenile 1 to the wall by his throat and again struck Juvenile 1 in the head with his flashlight. The defendant's strikes caused a wound near Juvenile 1's left ear.

The defendant admits he also used unreasonable and excessive force on Juvenile 1 by holding his knee on Juvenile 1's neck, shoulders, and upper back for between fifteen and sixteen minutes. During this period, Juvenile 1 was face-down on the floor, handcuffed, and unresisting. During the defendant's restraint, Juvenile 1 cooperated with police directions and, at times, cried from pain.

7

The defendant admits his uses of unreasonable force were willful. Through his experience as an MPD patrol officer, the defendant was familiar with MPD policies and training regarding the authorized use of force, including the requirement that an officer use force only in proportion to a subject's resistance and the requirement that an officer stop using force when a subject is not resisting. In particular, strikes to the head are considered deadly force and deadly force may only be used when a person presents a risk of death or great bodily harm to the officer. The defendant was also trained that if an arrestee is in the prone position, that position may make it more difficult to breathe, and thus, officers should move that arrestee to a side recovery or seated position.

The defendant's use of unreasonable force was also willful as evidenced by the report the defendant wrote about the incident in which he omitted that he repeatedly struck Juvenile 1 in the head with a flashlight, grabbed Juvenile 1 by the throat, and used his knee to pin Juvenile 1 to the ground for more than fifteen minutes.

The defendant's willful uses of unreasonable force resulted in bodily injury to Juvenile 1.

3.  **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in these cases. As part of this Plea Agreement, and based upon the concessions of the United States within this Plea Agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pretrial motions in these cases.

8

The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Additional Consequences**. The defendant understands that as a result of his conviction, he could be assessed the costs of prosecution and experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

5. **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he would have the right to an attorney at every stage of these proceedings and, if necessary, one would be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he did so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

6. **Statutory Penalties.** The defendant understands that Count One of the Indictment (Title 18, United States Code, Section 242) is a felony offense that carries the following statutory penalties:

    a. a maximum of life imprisonment;

    b. a supervised release term of not more than 5 years;

    c. a maximum fine of $250,000;

    d. assessment to the defendant of the costs of prosecution, imprisonment, and supervision, as defined in 28 U.S.C. §§ 1918(b) and 1920; and

    e. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

The defendant understands that Count One of the Information (Title 18, United States Code, Section 242) is a felony offense that carries the following statutory penalties:

    a. a maximum of ten years in prison;

    b. a supervised release term of not more than 3 years;

    c. a maximum fine of $250,000;

    d. assessment to the defendant of the costs of prosecution, imprisonment, and supervision, as defined in 28 U.S.C. §§ 1918(b) and 1920; and

    e. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

Therefore, under the terms of this Agreement, the total statutory penalties are: a maximum of life imprisonment; a supervised release term of not more than 5 years; a

maximum fine of $500,000; assessment to the defendant of the costs of prosecution, imprisonment, and supervision as defined in 28 U.S.C. §§ 1918(b) and 1920; and a mandatory special assessment of $200 under 18 U.S.C. § 3013(a)(2)(A).

7.  **Revocation of Supervised Release.**  The defendant understands that if the defendant were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term.

8.  **Guideline Calculations.**  The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, et seq.  Nothing in this Plea Agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence.  The parties stipulate to the following guideline calculations:

 a. **Count One of the Indictment:**

  i. Base Offense Level.  The parties agree that pursuant to U.S.S.G. § 2H1.1(a), the base offense level is 12 or the base offense level for the underlying offense, which in this case is second-degree murder.  U.S.S.G. § 2A1.2(a).  The base offense level for second-degree murder is 38.  U.S.S.G. § 2A1.2(a).  As 38 is greater than 12, the parties agree the **base offense level is 38.**

  ii. Specific Offense Characteristics.  The parties agree that the base offense level should be **increased by 6 levels** for color of law.  U.S.S.G. § 2H1.1(b)(1).

11

        iii.    <u>Chapter 3 Adjustment</u>. The parties agree that the base offense level should be **increased by 2 levels** for restraint of the victim. U.S.S.G. § 3A1.3.

b.    **Count One of the Information:**

        i.    <u>Base Offense Level</u>. The parties agree that pursuant to U.S.S.G. § 2H1.1(a), the base offense level is 10 or the base offense level for the underlying offense, which in this case is aggravated assault. U.S.S.G. § 2A2.2(a). The base offense level for aggravated assault is 14. U.S.S.G. § 2A2.2(a). As 14 is greater than 10, the parties agree the **base offense level is 14**.

        ii.    <u>Specific Offense Characteristics</u>. The parties agree that the base offense level should be **increased by 4 levels** for use of a dangerous weapon. U.S.S.G. § 2A2.2(b)(2)(B). The parties agree that the base offense level should be **increased by 3 levels** for bodily injury. U.S.S.G. § 2A2.2(b)(3)(A). The parties agree that the base offense level should be **increased by 6 levels** because the offense was committed under color of law. U.S.S.G. § 2H1.1(b)(1).

        iii.    <u>Chapter 3 Adjustment</u>. The parties agree that the base offense level should be **increased by 2 levels** because the defendant knew or should have known the victim was vulnerable. U.S.S.G. § 3A1.1(b)(1).

c.    **Other Adjustments**

        i.    <u>Combined Offense Level</u>. The parties agree that the offenses charged in the Indictment and the Information are not grouped, which results in two Units. U.S.S.G. § 3D1.2(d). The parties agree that the offense level will not increase because one Unit (from Count One of the Information) is 9 or more levels less serious than the other Unit (from Count One of the Indictment). U.S.S.G. § 3D1.4(c). This results in an offense level of **46**.

        ii.    <u>Acceptance of Responsibility.</u> The United States agrees to recommend that the defendant receive a **3-level reduction** for acceptance of responsibility and to make any appropriate motions with the Court. However, the defendant understands

and agrees that this recommendation is conditioned upon the following: (i) the defendant testifies truthfully during the change of plea hearing, (ii) the defendant cooperates with the Probation Office in the pre-sentence investigation, and (iii) the defendant makes no statements and commits no further acts inconsistent with acceptance of responsibility. U.S.S.G. § 3E1.1. If the defendant receives the 3-level adjustment, his final adjusted offense level will be **43**.

d. **Criminal History Category.** Based on information available at this time, the parties believe that the defendant's criminal history category is **I**. This **does not** constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

If it is determined that the defendant's criminal history is other than category I, such determination shall not be a basis for either party to withdraw from this Plea Agreement.

e. **Guideline Range.** If the defendant's adjusted offense level is **43** and his criminal history is **I**, the advisory guideline range is life imprisonment.

f. **Fine Range.** The Sentencing Guidelines fine range is $50,000 to $500,000. U.S.S.G. § 5E1.2(c).

g. **Supervised Release.** The Sentencing Guidelines require a term of supervised release of at least 2 years, up to a maximum supervised release term of 5 years for Count One of the Indictment and a term of supervised release of at least 1 year, up to a maximum supervised release term of 3 years for Count One of the Information. U.S.S.G. § 5D1.2(a)(1).

9. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable guideline factors and

13

the applicable criminal history category. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this Agreement.

10. **Stipulated Term of Imprisonment and Supervised Release**. Based on the facts and circumstances in these cases, the United States and the defendant agree, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the following disposition of this case is appropriate:

    a. The Court should impose a sentence of imprisonment of no less than 240 months and no greater than 300 months (expected to serve no less than 204 months and no greater than 255 months, assuming all good-time credit);

    b. The Court should impose a five-year term of supervised release;

    c. The Court, pursuant to U.S.S.G. § 5G1.3(b)(2), should order that the sentence of imprisonment imposed in this case be served concurrent to the 270-month sentence imposed in *State of Minnesota v. Derek Chauvin*, No. 27-CR-20-12646 (expected to serve approximately 178 months, assuming all good-time credit); and

    d. At sentencing, the Court, pursuant to U.S.S.G. § 5G1.3(b)(1), should adjust the sentence for any period of imprisonment/incarceration already served in the case listed in the preceding subparagraph so that

the defendant receives credit in this case for time spent in state custody.

The parties understand that if this Plea Agreement is accepted by the Court, the agreed disposition set forth in Paragraphs 10a – 10d will be binding on the Court. The parties agree to advocate for a sentence as set forth in Paragraphs 10a – 10d. Specifically, the United States intends to advocate for a sentence of 300 months. The agreed sentence is based on the parties' consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

The parties acknowledge and agree that this stipulation under Rule 11(c)(1)(C) is limited to the issues set forth in Paragraphs 10a – 10d, and that this stipulation has no effect on the Court's authority and discretion to impose a fine, restitution, or any and all other applicable penalties and conditions as the result of the defendant's conviction on Count One of the Indictment and Count One of the Information. If the Court declines to accept this Plea Agreement and the agreed sentencing disposition set out in Paragraphs 10a – 10d, either party may withdraw from the Agreement.

11. **Special Assessments.** The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that any special assessment, fine, costs, order of restitution, or other financial judgment imposed as part of the sentence in this case shall be due, payable, and collectable immediately upon the entry of the judgment

and commitment order in this case, and the United States may take all steps under the law to collect on the judgment at that time.

12. **Restitution.** The defendant understands and agrees to pay restitution pursuant to Title 18, United States Code, Section 3663, and the Court may order the defendant to pay restitution to the victims of his crimes. The parties agree that G.P.F. and Juvenile 1 are identifiable victims who have suffered a physical injury or pecuniary loss. Pursuant to Title 18, United States Code, Section 3663(a)(3), the defendant agrees to pay restitution in an amount to be determined by the Court at sentencing. There is presently no agreement as to the amount of restitution. The parties agree that the procedures for issuance and enforcement of orders of restitution in Title 18, United States Code, Section 3664 apply.

13. **No Contact.** The defendant agrees to continue to have no contact, directly or through third parties, with the victims of his crimes, including Juvenile 1 and the estate or family of George Perry Floyd, Jr., while in Bureau of Prisons custody or during any period of supervised release.

14. **No Law Enforcement Employment**. The defendant understands and agrees that, as a convicted felon, he will never be eligible to work in any law enforcement capacity, even once he has served his substantial prison sentence. Accordingly, the defendant expressly agrees to permanently forfeit any law enforcement and correctional officer certifications with the Minnesota Board of Peace Officer Standards and Training and any other law enforcement certifying agency from which he possesses a current law

enforcement or correctional officer certification via written notice to that organization or organizations prior to the date of his sentencing in this case.

15. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee, or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

16. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues, including the sentence imposed in this case. This appeal waiver is effective so long as the sentence is consistent with Paragraph 10 herein and includes, but is not limited to, the defendant's waiver of the right to appeal his guilt or innocence, his sentence and restitution, the constitutionality of the statutes to which the defendant is pleading guilty, and the applicability of those statutes to his actions.

The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant has discussed these rights with his attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily. The United States agrees to waive its right to appeal any sentence so long as the sentence is consistent with Paragraph 10 herein.

17. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

18. **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.

Date: Dec. 15, 2021

_____
CHARLES J. KOVATS, JR.
Acting United States Attorney

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice

Date: Dec. 15, 2021

_____
BY: SAMANTHA TREPEL
Special Litigation Counsel

Date: 15 DEC 2021

_____
DEREK MICHAEL CHAUVIN
Defendant

Date: 12-15-21

_____
ERIC NELSON
Attorney for Defendant

19