RECEIVED
BY MAIL
NOV 1 3 2023
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

SCANNED
NOV 1 3 2023
U.S. DISTRICT COURT ST. PAUL

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff-Respondent,

v.

DEREK MICHAEL CHAUVIN,

Defendant-Movant.

Case No. 0:21-CR-108-PAM

EVIDENTIARY HEARING REQUESTED

MOTION TO VACATE CONVICTION AND SENTENCE UNDER 28 U.S.C. SECTION 2255

The Defendant, respectfully moves the Court under 28 U.S.C. Section 2255 for issuance of a writ of habeas corpus ad subjiciendum that vacates the May 9, 2023 judgment of conviction and sentence. In support thereof, defendant declares under the penalty of perjury, 28 U.S.C. Section 1746, the following particulars are true and correct:

## JURISDICTIONAL STATEMENT

The Court's jurisdiction is founded upon 28 U.S.C. Section 2255 per U.S. Constitution, Article I, Clause 9, Sec 2. Defendant has not previously filed any petitions or motions seeking collateral review and vacatur of the judgment.

## STATEMENT OF THE FACTS

Per the advice of former counsel, Mr. Eric J. Nelson, on December 15, 2021, defendant entered into a binding plea agreement under Fed. R. Crim. P. 11(c)(1)(C) that covers two violations 18 U.S.C. Section 2 and Section 242, and projected a sentencing cap of 300 months imprisonment concurrent to defendant's state sentence, respectively. ECF No. 142.

On July 7, 2022, the Court imposed a sentence of 252 months imprisonment followed by by 5 years supervised release, while reserving judgment on restitution. On May 9, 2023, the Court reduced the sentence to from 252 months to 245 months imprisonment followed by 5 years of supervised release, and entered judgment with no restitution. ECF No. 529.

In late-July 2023, defendant learned of the Court's May 9, 2023 judgment for the first time by way of a legal call regarding post-conviction relief per newly discovered evidence showing actual innocence with attorney, Mr. Paul D. Petruzzi, and immediately filed a notice of appeal pursuant to Garza v. Idaho, 139 S. Ct. 738, 744-745 (2019). See, Appeal No. 23-2756.

In early-August 2023, Nelson filed a motion to withdraw from representing defendant both in response to the notice of appeal in this court and in the court of appeals. However, defendant filed a Response In Opposition to certain parts of Nelson's Motion To Withdraw in the court of appeals because defendant sought to challenge the guilty plea on the appeal.

Before the Response In Opposition could arrive by U.S. Mail to the court of appeals, on August 14, 2023 the court of appeals dismissed the appeal as untimely. See, Appeal No. 23-2756, Id. After that dismissal, defendant's Response In Opposition was filed and construed as a Petition For Panel Rehearing by the court of appeals.

On September 19, 2023, the court of appeals denied the so-construed petition for rehearing. This motion follows.

## GROUND ONE

Under Murray v. Carrier, 477 U.S. 478, 496 (1986), a "miscarriage of justice" exists as defendant is "actually innocent" of

causing the death of Mr. George Perry Floyd, Jr., and likewise "actually innocent" of depriving Floyd of his constitutional rights - to be free from an unreasonable seizure and to be free from the use of unreasonable force by a police officer.

Supporting Facts:

In February 2023, defendant began corresponding with Dr. William Schaetzel, D.O. M.S. FCAP, a forensic pathologist. Dr. Schaetzel indicated that he had reviewed the Hennepin County Medical Examiner's Office Autopsy Report and NMS Labs Toxicology Report dated May 25, 2020, and came to the conclusion that defendant did not cause Floyd's death. See, Exhibit-A, 02/23/23 - 08/14/23 E-Mails.

On March 10, 2023, Dr. Schaetzel attempted to contact Nelson after several unsuccessful attempts by defendant to reach Nelson, both by e-mail and telephone, directly and through third parties, but Nelson never responded. Defendant had never been provided a copy of the Autopsy and Toxicology Report by Nelson, the State of Minnesota, or the government prior to his December 15, 2021 guilty plea, and sought copies of both reports to corroborate Schaetzel's findings. Exhibit-A

On June 8, 2023, Dr. Schaetzel forwarded a copy of his (3) Page explanation of Floyd's actual cause of death to co-defendants Lane and Keung. Exhibit-A. On July 19, 2023, Dr. Schaetzel further explained to defendant in writing why the Medical Examiner's Autopsy Report is inaccurate according to its "body of the report". Exhibit-A.

On July 21, 2023, defendant received an e-mail from Dr. Paul Haney confirming that the Medical Examiner's Report omitted Floyd's sickling and paraganglioma conditions, and that "hypoxia was not present before death because of the lack of sickling [and] [t]here is no clear cut evidence for asphyxia as well as evidence of no major or minor trauma about the neck. There is clear evidence that subsequent testing to further rule out other causes were not done." Exhibit-A.

In late-July 2023, defendant received a copy of the Autopsy (Exhibit-B) and Toxicology Report (Exhibit-C) and the Minneapolis Police Department (MPD) Use of Force, 5-300 Policy (Exhibit-D) for the first time from defendant's state appellate counsel, Mr. William F. Mohrman, per defendant's July 19, 2023 request for those documents. Exhibit-A.

On August 14, 2023, defendant requested Dr. Schaetzel to produce any evidence that he contacted Nelson during the state court trial to provide him with his expert conclusions and willingness to testify. On August 14, 2023, Dr. Schaetzel provided defendant with the exact email he tendered to Nelson, Hennepin County Judge Cahill, and district attorney Jung on April 17, 2021. Exhibit-A.

Prior to August 14, 2023, Nelson never informed defendant of Schaetzel's communications at any time whatsoever. That is, Schaetzel expressed in writing his willingness to testify as a defense witness to the conclusions he made regarding the actual cause of death, and Nelson did not even notify defendant of Schaetzel's existence or allow defendant to make an informed decision on whether to call Schaetzel as a defense witness or to plead guilty in this case.

Prior to late-July 2023, Nelson never provided defendant with a copy of the MPD, Use of Force, 5-300 Policy, which shows defendant correctly performed the Conscious Neck Restraint and Maximal Restraint Technique on Floyd pursuant to Section 5-311, 5-316. See Exhibit-D. Specifically, "[t]he subject is placed in a neck restraint with intent to control, and not to render the subject unconscious, by only applying light to moderate pressure." Exhibit-D, Id. at 5-311; accord 5-316.

Had defendant been provided Dr. Schaetzel's and Dr. Haney's conclusions (Exhibit-A), the Autopsy Report (Exhibit-B), Toxicology Report (Exhibit-C), and the MPD Use of Force, 5-300 Policy (Exhibit-D) prior to his December 15, 2021 guilty plea, defendant would not have pled guilty, and would have insisted on going to trial. That is, had Nelson not withheld the above stated Exhibits from defendant while simultaneously advising defendant to accept the plea agreement, the outcome of the proceeding would be drastically different in this case.

## ARGUMENT AND POINTS OF LAW (GROUND ONE)

It is well established that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973).

Those standards "set forth in McMann" are in the main that "defendants facing felony charges are entitled to the effective assistance of competent counsel [and] if the right to counsel guaranteed by the Constitution is to serve its purpose defendants

cannot be left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." McMann v. Richardson, 397 U.S. 759, 771 (1970).

Moreover, "the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial - a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397U.S. 742, 748 (1970).

Therefore, "if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts ... Requiring this examination of the relation between the law and facts the defendant admits having committed is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." McCarthy v. United States, 394 U.S. 459, 466-467 (1969).

Next, in order to demonstrate prejudice where, as here, defendant challenges the validity of his guilty plea, defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). And, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)(citing Strickland v. Washington, 466 U.S. 668, 694 (1984)).

Here, defendant has shown actual innocence because "in light of all the evidence" - "it is more likely than not that no reasonable juror would have convicted him," Schlup v. Delo, 513 U.S. 298, 327-328 (1995), knowing that Floyd's paraganglioma, sickling, and toxicology were his actual cause of death. No reasonable juror would have convicted defendant knowing the actual cause of death as well as the fact that defendant performed the Conscious Restraint Technique and Maximal Restraint Technique in accordance with MPD Use of Force, 5-300, Id. at 5-311, 5-316.

...

## GROUND TWO

Under Garza v. Idaho, 139 S. Ct. 738, 744-745 (2019), Nelson performed unconstitutionally deficient by failing to file a direct appeal to "challenge the Government's power to criminalize [defendant's] (admitted) conduct [to] thereby call into question the Government's power to constitutionally prosecute him" under Class v. United States, 138 S. Ct. 798, 805 (2018), and thus caused the prejudice of depriving defendant of a vacatur and/or reversal of his convictions and sentence on constitutional grounds by the court of appeals.

Supporting Facts:

Between December 15, 2021 - May 25, 2023, defendant consistently and adamantly expressed to Nelson that extensive probable cause of Floyd's criminal activity existed according to eyewitnesses at the scene, video surveillance, cell phone, and body cam footage. See, Exhibit-E. Nelson did not file a direct appeal or any briefing in an appeal challenging the constitutionality of the charges brought against defendant on Fifth Amendment Due Process Clause grounds. See, ECF No. 142 - 529; and, Appeal No. 23-2756, Id. As a result, defendant's convictions and sentence remain in place.

## ARGUMENT AND POINTS OF LAW (GROUND TWO)

The constitutionality of the charges brought against defendant for depriving Floyd of his right to be free from a purportedly unreasonable seizure, ECF No. 1, Id., is patently dubious. Specifically, published precedent existed for Nelson to rely on in a constitutional challenge to the prosecution showing that the independent probable cause of Floyd's criminal activity precluded prosecuting defendant for an "unreasonable seizure".

In United States v. Blakeney, 876 F.3d 1126 (8th Cir. 2017), the court of appeals took up this identical question, and concluded that a defense of independent probable cause could only be defeated "[w]hen an officer, knowing a warrant to be illegal, groundless, or fictitious, willfully uses his authority, and/or such an instrument to arrest and incarcerate the accused." Id. at 1132 (quoting United States v. Ramey, 336 F.2 512, 514 (4th Cir. 1964)).

Here, it is undisputed that probable cause of Floyd's criminal activity existed both prior to, and after, defendant arrived to the scene. However, because of the sensationalism created by the media, political, and social pressures it appears the government simply bootstrapped an "unreasonable seizure" to an "unreasonable use of force" without addressing the basis for probable cause at the outset, and during the course of, the Floyd incident.

Furthermore, the criminal prosecution of state actors for causing an unreasonable seizure risks violating the constitutional principle that criminal laws must give fair warning of what they prohibit. United States v. Lanier, 520 U.S. 259, 266 (1997). Indeed, "due process bars court from applying a novel construction of a criminal statue to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." Id. at 266.

The unconstitutionality of this prosecution for an unreasonable seizure is glaring because it bodes the questions:

Is the government now free to charge every police officer criminally under 18 U.S.C. Section 242 every time a motion to suppress evidence is granted because of an unreasonable seizure?

Is the government free to bypass sovereign immunity under the Eleventh Amendment and jump straight to criminal liability under 18 U.S.C. Section 242 without affording police officers their qualified immunity and day in court in a civil proceeding beforehand?

It should have been unequivocally clear to Nelson that the charges here imposed criminal liability for conduct which, "in the light of pre-existing law, the unlawfulness under the Constitution is apparent." Lanier, Id. at 271-272.

Accordingly, despite Blakeney and Class, no appeal was filed by Nelson to raise these important issues. Nelson and the government may complain that the appellate waiver in the plea agreement prohibited an appeal and thus this ground lacks merit because any appeal might have been dismissed. However, Class explicitly held defendant could "challenge the

Government's power to criminalize [defendant's] (admitted) conduct [and] [a] guilty plea does not bar a direct appeal in these circumstances." Class, Id. at 805. Nelson's failure to appeal caused the prejudice of the convictions and sentence.

## RELIEF REQUESTED

Defendant respectfully requests issuance of a writ of habeas corpus ad subjiciendum that vacates the May 9, 2023 judgment, ECF No. 529, and orders a new trial where defendant may file dispositive pretrial motions and/or subsequently proceed to a jury trial. Alternatively, defendant respectfully requests an evidentiary hearing and/or appointment of counsel (preferably Mr. William F. Mohrman due to his familiarity of the case), or any other relief the Court may deem fair and just.

## CONCLUSION

Wherefore defendant prays the Court grants this motion and the relief requested for the foregoing reasons.

Respectfully Submitted,

x _____    Date: 11/02/2023

Mr. Derek Michael Chauvin