UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108 (PAM/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) GOVERNMENT'S SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 |
| 1. DEREK MICHAEL CHAUVIN, | ) |
| Defendant. | ) |

COMES NOW the United States of America, by and through its undersigned attorneys, and respectfully submits this Surreply to Defendant Derek Michael Chauvin's Reply Brief to his Motion to Vacate Conviction and Sentence Under 28 U.S.C. § 2255. ECF No. 562. On December 15, 2021, Defendant pleaded guilty to violating 18 U.S.C. § 242 and "waive[d] the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel." ECF No. 142, Plea Agreement, at ¶ 16. Defendant's instant claims of ineffective assistance fail on their merits, and the files and records of this case conclusively show that Defendant is not entitled to relief. The government respectfully requests that this Court deny the motion without hearing.

This Court should reject the additional arguments set forth in Defendant's reply brief, because those arguments misconstrue both prongs of *Strickland*'s ineffective-counsel test. Under *Strickland*, a defendant must show (1) that his counsel's performance was so deficient that it "fell below an objective standard of reasonableness," and (2) that counsel's

1

deficient performance actually prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 6878 (1984)). As to the first prong, Defendant argues that his guilty plea should be overturned because, before he pled, counsel failed to inform him of an unsolicited opinion from a doctor who had seen Defendant's state trial on television. Even assuming counsel did not inform Defendant, Defendant mischaracterizes this as violating his right to consult on his overall "decision to plead," *see* Doc. 562 at 10, 23, instead of what it really was—a tactical decision by counsel not to further explore an untested (but in any event cumulative) opinion offered by someone holding himself out as an expert. Such a decision is a "paradigmatic example" of an attorney's strategic choice, which, when made after a reasonable investigation, is "virtually unchallengeable" in effectiveness claims. *See Hinton v. Alabama*, 571 U.S. 263 (2014).

Defendant likewise misconstrues the second *Strickland* prong by assuming he has established prejudice solely through his self-serving statement that, had he known of the unsolicited medical opinion, he would have exercised his right to trial. *See* Doc 562 at 18-22. Such "post hoc assertions" are insufficient to establish prejudice. *Meza-Lopez v. United States*, 929 F.3d 1041, 1045 (8th Cir. 2019). Defendant fails to point to contemporaneous evidence that supports his post hoc assertion, especially where the state jury rejected his medical defense.

> **I. Counsel Did Not Unreasonably Fail To Consult or Investigate Under *Strickland*'s High Bar for Deficient Performance.**

Defendant falls far short of establishing the kind of deficient performance required to show ineffective assistance of counsel. Though an attorney has a duty to consult with

his client regarding "important decisions," including questions of overarching defense strategy, *Strickland*, 466 U.S., at 688, counsel need not consult on "every tactical decision." *United States v. Chapman*, 593 F.3d 365, 370 (4th Cir. 2010) (internal quotation marks omitted). "The selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" *Hinton*, 571 U.S. at 275 (quoting *Strickland*, 466 U.S. at 690). Indeed, the Supreme Court has emphasized that "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630 (2002).

Here, even assuming that Dr. Schaetzel would qualify as an expert, and that counsel did not discuss his specific email with Defendant, counsel's actions were reasonable. Because counsel had previously consulted a panel of experts about such medical issues for the state trial, including the defense expert who testified, it is patent that counsel also discussed with Defendant the substantially similar state-trial medical defense. Thus, the question is not whether counsel failed to consult with his client about a medical defense at all but, instead, whether counsel was deficient in failing to tell Defendant about an unsolicited opinion that provided additional support for a theory already rejected by a state jury. He was not. Because Defendant was informed about the state-court testimony (and that the jury rejected it), he cannot now assert his counsel acted outside reasonable norms

3

by failing to alert him to a slight difference in medical opinion from an unsolicited source of unvetted qualifications.

Nor was counsel deficient for failing to more fully investigate any potential medical defense raised by Dr. Schaetzel's email, where he had already pursued a substantially similar line of defense. "[W]hen the facts that support a certain potential line of defense are generally known to counsel . . . , the need for further investigation may be considerably diminished or eliminated altogether." *Strickland*, 466 U.S. at 690-91; *see also Harvey v. United States*, 850 F.2d 388, 400 (8th Cir. 1988) ("An attorney does not have an obligation to undertake an investigation which, in his reasoned judgment, does not have promise."). This is especially true here, where Dr. Schaetzel's opinion is not meaningfully different, factually or legally, from that of Defendant's state-trial defense expert. Defendant's expert testified that certain medical issues—"paraganglionoma," "sudden cardiac arrythmia" due to "atherosclerotic and hypertensive heart disease," and the effects of fentanyl, methamphetamine, and vehicle exhaust—"combined to cause Mr. Floyd's death." *See State of Minnesota v. Chauvin*, 27-cr-20-12646, Trial Tr. April 14, 2021 at p. 33 lines 5-20 (testimony of defense expert Dr. David Fowler). Dr. Schaetzel's email focusing on the paraganglioma as the cause is only a slight variation on this theory. Legally, both theories serve the same purpose: to assert that Defendant's actions were not the but-for cause of Mr. Floyd's death. Indeed, had Defendant been informed of Dr. Schaetzel's email pre-plea, he would have known about an opinion that was similar but potentially meaningfully weaker than Defendant's previous expert, in that Dr. Schaetzel's alleged email to counsel appears to concede the officers' actions contributed to Mr. Floyd's death: "When officers then knelt

4

on [Floyd] they would have further compressed the tumor, releasing more catecholamines which may have caused sudden cardiac spasm and seizure with asystole and sudden death." Doc. 544-1 at 11.

Holding otherwise would open the floodgates to defendants seeking to have courts second-guess the tactical, expert-related decisions of attorneys. The Supreme Court has cautioned against exactly this: "We do not today launch federal courts into examination of the relative qualifications of experts hired and experts that might have been hired." *Hinton*, 571 U.S. at 275. Courts have thus found counsel ineffective in their investigative duties only in egregious cases, where a lawyer has totally failed to explore any expert testimony on issues obviously central to the defense case, or, as in *Hinton*, where "an inexcusable mistake of law . . . caused counsel to employ an expert that *he himself* deemed inadequate." *Id*.; *see also, e.g.*, *Holsomback v. White*, 133 F.3d 1382 (11th Cir. 1998) (finding counsel ineffective where he conducted no investigation into medical evidence and thus could not have made an informed tactical decision to not pursue defense). This case is manifestly not such a failure, where counsel developed expert testimony at the state trial on the paraganglioma issue, of which Defendant was aware. Indeed, if any time counsel received an unsolicited email from someone claiming to be an expert, counsel had a duty to run down the scope of the sender's expertise and fully examine all allegations, such a duty would interfere with counsel's trial preparation. Defendant cannot meet his burden to show deficient performance.

5

## II. Defendant's Post-hoc Assertions Fail To Establish Prejudice.

The essence of Defendant's prejudice argument is that, had he known of the unsolicited email, he would have insisted on going to trial and mounted a medical-based defense substantially similar to that which had proved unsuccessful in his state trial. As a matter of logic, despite Defendant's post hoc assertion to the contrary, there is no reason to conclude he would have changed his plea—where he faced a Guidelines life sentence if convicted at trial—based upon the marginally incremental advantage that one additional, untested expert could provide over an unsuccessful defense fully tested in court. As a matter of law, the Defendant offers no more to support his prejudice arguments than his self-serving assertion that he would not have accepted a plea if he had known about Dr. Schaetzel's email. The Eighth Circuit has stressed that such post hoc claims are insufficient to establish prejudice. *Meza-Lopez*, 929 F.3d at 1045 ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.") (internal quotation marks omitted); *United States v. Frausto*, 754 F.3d 640, 644 (8th Cir. 2014) ("[Defendant's] bare assertion that he would not have pled guilty is insufficient to allow for an intelligent assessment of the likelihood that he would not have pled guilty and is far too speculative to warrant § 2255 relief.").

Instead, courts may not upset a plea absent "contemporaneous evidence" supporting the defendant's "expressed preferences." *Meza-Lopez*, 929 F.3d at 1045. Here, it is clear from the record that Defendant was aware of a substantially similar potential medical defense—after all, he had relied on it in his state trial. As discussed above, Dr. Schaetzel's opinion is not meaningfully different from the testimony of Defendant's state trial expert

6

and, if anything, Dr. Schaetzel's *pre-plea* email expressed a weaker opinion than that of the state expert. Dr. Schaetzel suggested the paraganglioma as a "possible scenario" and noted that lying in a prone position would have increased Mr. Floyd's "difficulty breathing" and caused further compression of the paraganglioma. Doc. 544-1 at 11. This theory does not rule out that kneeling on Mr. Floyd was a contributory factor, or even a but-for cause of death. This theory was also not strategically sound for defense counsel to pursue. Dr. Schaetzel's pre-plea email zeroed in on the paraganglioma and Mr. Floyd's position on the ground under the officers' compression, instead of the myriad medical conditions that the state defense expert testified contributed to Floyd's death (blockage of arteries, drugs in his system, paraganglioma, carbon monoxide from the exhaust pipe, etc.). *See State of Minnesota v. Chauvin*, 27-cr-20-12646, Trial Tr. April 14, 2021 at p. 33 lines 5-20 (testimony of defense expert Dr. David Fowler). It would be riskier for the Defendant, in a federal trial, to rely on one specific cause (the paraganglioma) – especially as state experts contradicted it – rather than the medley of causes presented as a defense at the state trial.[1]

Defendant has pointed to no contemporaneous evidence suggesting that, had he known that evidence from an unsolicited source supported such a defense, he would have gone to trial—nor could he, as this evidence was cumulative of expert opinions Defendant

---

[1] Additionally, had Dr. Schaetzel testified, he would have been subject to impeachment. *See* Appendix A (statement of undisputed facts, No. 2:17-cv-1007 (N.D. Iowa May 3, 2018)). Defendant has further failed to meet his burden because he has not shown that Dr. Schaetzel had sufficient current licensure to have been admitted as an expert in forensic pathology.

and his counsel had already considered. Defendant's failure to meet the *Strickland* prejudice prong, on its own, requires rejection of his claim.

To argue otherwise, Defendant relies on *Lee v. United States*, 582 U.S. 357 (2017), to assert that prejudice in the plea context requires only "demonstrating a 'reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.'" Doc. 562 at 18 (quoting *Lee*, 582 at U.S. 357). Not so. The Supreme Court has stressed that, even in the plea context, if the missing information concerns a defendant's chances at trial, courts should analyze alleged prejudice by "making a prediction of the likely trial outcome." *Lee*, 582 U.S. at 368, n.3. In other words, Defendant "must also show that he would have been better off going to trial." *Id.* at 365. Thus, even in the plea context, "the 'prejudice' inquiry . . . closely resemble[s] the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Frausto*, 754 F.3d at 643 (internal quotation marks omitted). Accordingly, courts have denied ineffective-counsel claims for lack of prejudice where the information defendants claim to have been missing when they pled would not likely have given them a different outcome through trial. *See, e.g.*, *Blalock v. Lockhart*, 977 F.2d 1255, 1258 (8th Cir. 1992) (denying ineffectiveness claim at plea stage where defendant argued counsel did not inform him of intoxication defense because of "futility" of defense).

Here, the evidence against Defendant was overwhelming, including video evidence, policy and training evidence, and expert witnesses. As described above, the defense expert testified to this general medical issue, and the jury at Defendant's state trial rejected the theory. The doctor who performed Mr. Floyd's autopsy, Dr. Baker, also rejected the theory:

8

he testified at the federal trial that Mr. Floyd had "an incidental paraganglioma," which "doesn't have anything to do with the larger issue at hand, which in this case is [Mr. Floyd's] death." Fed. Trial Tr. Vol VIII at 1429 lines 12-23. There is no reason to think essentially the same testimony from an unvetted expert would have been more persuasive to a federal jury. And there is no reason to think *Defendant* would have been persuaded by such at the time of his plea.

### III. Defendant's Ineffectiveness Claims Regarding Counsel's Failure To Test Samples from Mr. Floyd's Body Are Meritless.

In his reply, Defendant raises a new claim not included in his original § 2255 motion: that counsel was ineffective because he failed to test samples from George Floyd's body for metanephrine and catecholamine levels and to have "the tissue sections of the heart reviewed." Doc. 562 at 23-24. Courts "do not generally consider arguments raised for the first time in a reply brief." *United States v. DeRoo*, 13 F. App'x 436, 438 n.2 (8th Cir. 2001); *see also* D. Minn. L.R. 7.1(c)(3)(B) ("A reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response."). Accordingly, Defendant's claim is waived.

Regardless, it also plainly fails on the merits, as declining to order the test is a reasonable tactical decision. As explained above, *Strickland* permits counsel to reasonably forego "particular investigations." 466 U.S. at 691. Here, it is clear from the record that counsel refrained from ordering testing after consultation with vetted experts (those who testified at Defendant's state trial) on this issue. Such conduct cannot be considered objectively unreasonable, especially where there is no guarantee that the tests would have

9

supported the Defendant's theory of the case. The Supreme Court has emphasized that counsel is not deficient for making a strategic decision to forego pursuing a particular kind of forensic or medical testing, if doing so would risk unfavorable results. *Harrington v. Richter*, 562 U.S. 86, 108 (2011) (an "attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense"); *Strickland*, 466 U.S. at 700 (finding no ineffectiveness in part because the "evidence respondent now offers might even have been harmful to his case" and unordered reports could have "directly contradicted" respondent's mitigation case). It would be well within the range of a reasonable tactical decision for counsel to refrain from ordering a test that might show an *absence* of high levels of catecholamines, which would either preclude counsel from relying upon such a defense or, at the very least, provide fodder for impeachment of the Defendant's expert witness. Defendant's argument fails on its face.

### IV.     Defendant's Claims Do Not Require an Evidentiary Hearing.

A defendant is not entitled to a § 2255 hearing where "the motion and the files and records of the case conclusively show that the [Defendant] is entitled to no relief." 28 U.S.C. § 2255(b); *see also Jackson v. United States*, 956 F.3d 1001, 1006 (8th Cir. 2020) ("No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."). It is appropriate for a court to deny a § 2255 hearing based on ineffective-counsel claims where the record is clear that "there is not a substantial probability that [Defendant] would have insisted on proceeding to trial." *Frausto*, 754 F.3d at 643.

No meaningful factual dispute exists here. Even assuming Defendant's factual assertations are true—that Dr. Schaetzel emailed counsel, and counsel did not consult with Defendant about the email—Defendant is not entitled to relief because he cannot meet his burden of showing deficient performance by counsel and prejudice. Accordingly, the government respectfully requests this Court deny Defendant's motion without a hearing.

Dated: August 14, 2024

Respectfully submitted,

ANDREW M. LUGER
United States Attorney

*/s/ LeeAnn Bell*
BY: LEEANN BELL
Assistant U.S. Attorney
Attorney ID No. 0318224

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

*/s/ Samantha Trepel*
BY: SAMANTHA TREPEL
Special Litigation Counsel
Attorney ID No. 992377 DC