UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-108 (PAM/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>1.  DEREK MICHAEL CHAUVIN, )<br>)<br>Defendant. )<br>) | GOVERNMENT'S MOTION TO RECONSIDER DEFENDANT'S MOTION FOR DISCOVERY |

COMES NOW the United States of America, by and through its undersigned attorneys, and respectfully submits this Motion to Reconsider the Court's Order granting Defendant Derek Michael Chauvin's Motion for Discovery. *See* Doc. 565 (order); Doc. 564 (Defendant's Motion for Discovery). Defendant's instant claims of ineffective assistance of counsel fail on their merits, and the files and records of this case conclusively show that Defendant is not entitled to relief. Accordingly, he cannot establish the "good cause" required for discovery under Rule 6(a) of the Rules Governing § 2255 Proceedings. *See* 28 U.S.C. foll. § 2255. The government therefore requests that this Court reconsider and deny Defendant's motion. Alternatively, for the reasons set forth below, the motion as drafted is premature, and should be denied. Further, if the Court denies the request for reconsideration, the United States seeks an amended order which grants reciprocal discovery.

1

As the government laid out in its previous briefs, *see* Doc. 553 at 5-12; Doc. 563 at 1-11,[1] no legal basis exists for Defendant's discovery requests, all of which stem solely from an email he received from an unvetted doctor offering a weaker version of the medical defense than the version that the jury had previously rejected at his state trial. Defendant's ineffective-counsel arguments fall far short on both parts of *Strickland*'s two-prong test, regardless of any information that could be revealed through the discovery he requests.

First, Defendant cannot show unreasonable performance by counsel. Counsel made a choice, based on his prior consultation with other experts and his experience defending Defendant's state trial, not to order certain forensic testing or further discuss with Defendant a variation of an expert defense that had already failed at that trial; this is precisely the type of strategic decision that courts have recognized as "virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). And even if Defendant could establish unreasonable performance, he could not demonstrate prejudice from counsel's decisions. It defies belief that, if Defendant had been aware of a weaker medical defense theory than the one already rejected by his state jury, he would have chosen trial again, in the face of overwhelming evidence and a Guidelines sentence of life. Because Defendant cannot establish ineffective counsel as a matter of law, he also cannot establish the "good cause" required for Rule 6(a) discovery, a standard that the Supreme Court has made clear is a demanding one that depends on the merits of petitioners' claims. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

---

[1] The government incorporates all arguments and authority included in its prior briefing on this issue.

I.      **Procedural History**

Defendant filed a pro se motion to vacate his conviction and sentence under 28 U.S.C. § 2255 on November 13, 2023. Doc. 544. On January 12, 2024, the government responded. Doc. 553. On July 31, 2024, Defendant, then represented by counsel, filed a reply brief. Doc. 562. In his reply brief, Defendant urged the Court in the interests of judicial economy to decide his ineffective assistance claim based on "failure-to-consult," and ***only if*** the Court were to reject that claim, was he requesting testing on the preserved samples. *Id.* at 24. The government responded via sur-reply on August 14, 2024. Doc. 563. On October 28, 2024, the Court held a conference call with the parties. Among other things, the Court indicated that Defendant should file a motion for discovery seeking testing, as opposed to bifurcating the hearing. As a result, Defendant filed his Motion for Discovery related to his habeas petition on Friday, December 13, 2024. Doc. 564. On the morning of Monday, December 16, without waiting for the government's response, this Court granted it. Doc. 565.

II.     **Argument**

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy*, 520 U.S. at 904. Instead, under Rule 6(a), discovery in habeas proceedings is available only for "good cause." "Before addressing whether petitioner is entitled to discovery under [Rule 6] to support his . . . claim," a court "must first identify the 'essential elements' of that claim." *Bracy*, 520 U.S. at 904; *see also Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2004) (same). The court must then evaluate whether "'specific allegations . . . show reason to believe that the petitioner may, if the

3

facts are fully developed [through discovery], be able to demonstrate that he is . . . entitled to relief.'" *Newton*, 354 F.3d at 783 (quoting *Bracy*, 520 U.S. at 908-909).

Here, the "essential elements" of Defendant's *Strickland* claim fail no matter the results of discovery. First, counsel's performance in deciding not to investigate further Dr. Schaetzel's message was plainly reasonable, as "[a]n attorney does not have an obligation to undertake an investigation which, in his reasoned judgment, does not have promise." *Harvey v. United States*, 850 F.2d 388, 400 (8th Cir. 1988); *see also Hinton*, 571 U.S. at 275 ("The selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'") (quoting *Strickland*, 466 U.S. at 690). Here, Defendant's counsel made a strategic decision, based on prior consultation with other experts, not to pursue an unsolicited variation of a defense that had already been rejected by Defendant's state jury. Caselaw is also clear that counsel need not consult with Defendant on such tactical decisions, *see, e.g., United States v. Jones*, 844 F.3d 636, 643-44 (7th Cir. 2016), although here it is patent that counsel had discussed with Defendant a stronger version of this medical defense when they used it at his state trial. Indeed, multiple experts at the state and federal trials—vetted professionals with access to the relevant records—were aware of Mr. Floyd's paraganglioma and opined on its effect. *See State of Minnesota v. Chauvin*, 27-cr-20-12646, Trial Tr. April 14, 2021, at 33:05-33:20 (testimony of defense expert Dr. David Fowler); Fed. Trial Tr. Vol VIII at 1429:12-23 (testimony of Dr. Andrew Baker, Hennepin County medical examiner). For example, Dr. Baker, who performed Mr. Floyd's autopsy, had seventeen years' experience as Chief Medical Examiner for three counties, was board-

4

certified in anatomic, clinical, and forensic pathology, and had previously been President of the National Association of Medical Examiners. *State of Minnesota v. Chauvin*, 27-cr-20-12646, Trial Tr. April 9, 2021, at 120:08-122:10. When asked whether Mr. Floyd's paraganglioma "had anything to do with Mr. Floyd's death," he testified:

> The short answer is I don't feel Mr. Floyd's paraganglioma had anything to do with his death. What we're talking about is an incidental tumor that I happened to find in his pelvis during the autopsy. I did look at it under the microscope. The most likely diagnosis is a paraganglioma, but I have no reason to believe that had anything to do with Mr. Floyd's death.

*Id.* at 153:16-154:03. Accordingly, regardless of whether Dr. Schaetzel's opinion is correct, counsel's decisions constituted sound strategy based on his previous investigation. Discovery on Dr. Schaetzel's opinion would not alter the reasonableness of his choices.

Similarly, counsel's decision to refrain from testing samples from Mr. Floyd's body for metanephrine and catecholamine levels did not fall below a reasonable standard of performance. To the contrary, a decision to pursue the testing may well have harmed Defendant's potential medical defense if they contradicted his theory that the paraganglioma (among other factors) contributed to his death. Courts have upheld exactly this decision against ineffectiveness claims, as an "attorney need not pursue an investigation . . . that might be harmful to the defense." *Harrington v. Richter*, 562 U.S. 86, 108 (2011); *see also, e.g.*, *Strickland*, 466 U.S. at 700 (finding no ineffectiveness in part because the unordered reports could have "directly contradicted" respondent's mitigation case). Because the weighing of such risks is sound legal strategy, Defendant's requested testing results—even if ultimately helpful to his defense—cannot salvage his ineffectiveness claim.

Further, even if counsel's decisions were objectively unreasonable, Defendant cannot come close to establishing prejudice, as there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. That is, Defendant cannot show that he "would have insisted on going to trial" *and* "that he would have been better off going to trial" with Dr. Schaetzel's theory. *See Lee v. United States*, 582 U.S. 357, 365, 368 & n.3 (2017) (noting that courts engage in a "prediction of the likely trial outcome" even in plea cases if the "attorney error allegedly affects how a trial would have played out"). Dr. Schaetzel's email offers a cumulative (but weaker) theory than the medical defense that had already failed at Defendant's state trial. Defendant's trial expert testified that certain medical issues unrelated to Defendant's actions—"paraganglioma," "sudden cardiac arrythmia" due to "atherosclerotic and hypertensive heart disease," and the effects of fentanyl, methamphetamine, and vehicle exhaust—"combined to cause Mr. Floyd's death." *See State of Minnesota v. Chauvin*, 27-cr-20-12646, Trial Tr. April 14, 2021, at p. 33 lines 5-20 (testimony of defense expert Dr. David Fowler). Dr. Schaetzel's pre-federal-plea email focused on the paraganglioma as the cause, *in combination with Defendant's actions*: "When officers then knelt on [Floyd] they would have further compressed the tumor, releasing more catecholamines which may have caused sudden cardiac spasm and seizure with asystole and sudden death." Doc. 544-1 at 11 (also noting that "lying in a prone position would have increased Mr. Floyd's "difficulty breathing" and caused further compression of the paraganglioma). In addition, it would be riskier for Defendant, in his federal trial, to rely on one specific cause (the paraganglioma), rather than the cumulative

6

causation presented at the state trial. It is therefore not credible that Defendant would have chosen trial again—facing overwhelming evidence and a Guidelines life sentence—based on a weaker theory than the one a jury had already rejected. Nor is there any reason to believe Defendant "would have been better off going to trial" and presenting this weaker theory. *See Lee*, 582 U.S. at 365.

Because Defendant's ineffectiveness claim fails no matter the results of his discovery requests, he cannot provide the "'specific allegations" required under Rule 6 that, if "fully developed," would enable him to demonstrate that he is "entitled to relief." *Bracy*, 520 U.S. at 908-909. In other words, "[u]nless the petition itself passes scrutiny, there would be no basis to require the [government] to respond to discovery requests." *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987); *see also Evans v. United States*, 284 F. App'x 304, 313 (6th Cir. 2008) ("Because it was not deficient for [petitioner]'s attorney not to seek production of [certain records], there is no need to conduct discovery into the documents' existence or content for the purpose of his ineffective-assistance claims."); *Williams v. Bagley*, 380 F.3d 932, 976 (6th Cir. 2004) (denying Rule 6 discovery request where defendant had "not shown that the requested discovery could yield evidence enabling [him] to prevail on his ineffective assistance claim").

Only if counsel was unreasonable in not pursuing testing should a court permit that testing as relevant to the prejudice inquiry. For example, in *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997), counsel failed to investigate a promising alternative-perpetrator theory, where the state conceded it had only "a weak, circumstantial case . . . devoid of motive and resting in large part on the nonexistence of any other likely suspect." *Id.* at

1011. Counsel had intended to order hair and blood testing that "would seriously undermine the prosecution's case," but was "distracted by other trials" and forgot. *Id.* at 1012. In the context of this unreasonable performance, the court granted the Rule 6 discovery request because "the test results may establish the prejudice required to make out [the *Strickland*] claim." *Id.* Here, in contrast, counsel undertook a thorough investigation of Defendant's medical defense for his trial, at which the evidence against Defendant was overwhelming.

Finally, the Court's order provides that it granted Defendant's motion "[g]iven the significant nature of the criminal case that Mr. Chauvin was convicted of." Doc. 565 at 3. But the "significan[ce]" of the charges cannot provide good cause where the requested discovery has no bearing on the success of the defendant's claims. *See, e.g.*, *Williams*, 380 F.3d at 937 (denying discovery request in habeas case involving aggravated murder conviction and death sentence). No matter the seriousness of or publicity surrounding the alleged offense, Defendant must (and cannot here) show that discovery could develop facts that would entitle him to relief.

At bottom, the question here is whether counsel's actions were reasonable. Counsel chose not to pursue a weaker variation of a medical defense that he had already investigated and pursued with the aid of vetted experts, and of which Defendant was well aware. The caselaw is clear that this falls well within industry norms. The results of that would-be investigation are therefore irrelevant to Defendant's ineffectiveness claim—the only claim he can raise under his plea agreement—and as a result Defendant's discovery motion should, upon reconsideration by this Court, be denied.

Alternatively, the motion as drafted is premature and should be denied unless and until the parties agree on a staged protocol that provides for appropriate procedures and protections for the involved samples. The government requests that first, Defendant file with this Court confirmation as to what laboratory or laboratories currently possess the samples. Once the status of the samples is clear, the government requests that Defendant next submit a proposed protocol that includes information about the laboratory that will conduct the tests (including accreditation) and how the samples will be handled (including what testing will be completed, how the sample will be transported, how chain of custody will be addressed, whether testing will consume the samples, etc.). Once this information is received, the United States (and other interested parties) may have further objection to the selected laboratory or the manner in which it proposes to handle the samples. Accordingly, the government requests an opportunity to respond to Defendant's proposed protocol.

In the alternative, if the Court denies the government's request for reconsideration and reaffirms the grant of discovery for the defendant, the government requests that the Court also grant reciprocal discovery to the government. The government specifically requests access to expert disclosures for any expert Defendant intends to call at a hearing (including each expert's qualifications and a full explanation of any opinions and the bases therefore), as well as all lab reports and test results generated by any lab to which Defendant submits requests.

### III. Conclusion

For the foregoing reasons, the government respectfully requests that this Court reconsider and deny Defendant's Motion for Discovery.

Dated: December 17, 2024                                        Respectfully submitted,

| | |
|---|---|
| ANDREW M. LUGER<br>United States Attorney | KRISTEN M. CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| */s/ LeeAnn Bell*<br>BY: LEEANN BELL<br>Assistant U.S. Attorney<br>Attorney ID No. 0318224 | */s/ Samantha Trepel*<br>BY: SAMANTHA TREPEL<br>Special Litigation Counsel<br>Attorney ID No. 992377 DC |